**WILLKIE FARR & GALLAGHER LLP**
LAURA LEIGH GEIST (SBN 180826)
lgeist@willkie.com
333 Bush Street, 34th Floor
San Francisco, CA 94104
Telephone: (415) 858-7400

SUSAN ROHOL (SBN 351888)
srohol@willkie.com
2029 Century Park East
Los Angeles, CA 90067-2905
Telephone: (310) 855-3172

DEBRA BOGO-ERNST *(Pro Hac Vice)*
dernst@willkie.com
AMY ORLOV *(Pro Hac Vice)*
aorlov@willkie.com
300 North LaSalle Drive
Chicago, IL 60654
Telephone: (312) 728-9000

*Attorneys for Defendants*
*HIPPO HOLDINGS, INC.*
*and HIPPO ANALYTICS, INC.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

LAUREN MORGAN, individually and on behalf of all others similarly situated,

Plaintiff,

v.

HIPPO HOLDINGS, INC. and HIPPO ANALYTICS, INC,,

Defendants.

Case No. 5:25-cv-06361

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**

**Date:** January 28, 2025
**Time:** 9:00 AM
**Ctrm.:** 3, 5th Floor
District Judge Noël Wise
280 South 1st Street
San Jose, CA 95113

Complaint Filed: July 29, 2025

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that the following Motion to Dismiss will be heard on January 28, 2025, at 9:00 AM, or as soon thereafter as counsel may be heard, in Courtroom 3 of the 5th Floor of the United States District Court for the Northern District of California, located at 280 South 1st Street, San Jose, CA 95113, with the Hon. Noël Wise presiding. Defendants Hippo Holdings, Inc. ("Hippo Holdings") and Hippo Analytics, Inc. ("Hippo Analytics," together with Hippo Holdings, "Hippo") will and hereby do move the Court pursuant to Federal Rules of Civil Procedure 8, 12(b)(1), 12(b)(2), and 12(b)(6) for an order dismissing the complaint with prejudice because any amendment of the complaint would be futile. The Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities contained herein, all pleadings and other papers on file in this action, and any other evidence or argument that may be presented to the Court in connection with the Motion.

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether the Complaint should be dismissed under Rule 8 for failure to state a basic claim.

2. Whether the Complaint should be dismissed for lack of standing under Federal Rule of Civil Procedure 12(b)(1).

3. Whether the Complaint should be dismissed for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

4. Whether Hippo Holdings should be dismissed under Rule 12(b)(1) for lack of personal jurisdiction.

5. Whether the claims should be dismissed with prejudice because amendment would be futile.

Dated: October 27, 2025

**WILLKIE FARR & GALLAGHER LLP**

By: */s/ Debra Bogo-Ernst*

Laura Leigh Geist (SBN 180826)
333 Bush Street, 34th Floor
San Francisco, CA 94104

Susan Rohol (SBN 351888)
2029 Century Park East
Los Angeles, CA 90067-2905

Debra Bogo-Ernst *(Pro Hac Vice)*
Amy Orlov *(Pro Hac Vice)*
300 North LaSalle Drive
Chicago, IL 60654

*Attorneys for Defendants*
*HIPPO HOLDINGS, INC.*
*and HIPPO ANALYTICS, INC.*

# TABLE OF CONTENTS


I. INTRODUCTION ....................................................................................................1

II. BACKGROUND ....................................................................................................1

III. LEGAL STANDARD ..............................................................................................2

IV. ARGUMENT ..........................................................................................................4

A. Plaintiff Fails to Meet Basic Rule 8 Pleading Requirements. ..............................4

B. Plaintiff Does Not Allege a Particularized and Concrete Injury-In-Fact. ..............5

C. Plaintiff Has Not Sufficiently Stated a Claim Under the ECPA. ..........................7

1. No "Interception" By a Third Party Occurred as Required Under the ECPA. ..............................................................................................7

2. The Information Allegedly Collected by the Third Parties Does Not Constitute the "Contents" of Communications. ..........................................9

3. ECPA Is a One-Party Consent Statute, and Plaintiff Has Failed to Sufficiently Plead That Hippo's Conduct Falls Within the Crime-Tort Exception. ....................................................................................10

D. Plaintiff Has Not Sufficiently Stated a Claim Under the CIPA. ..........................14

1. Plaintiff's CIPA Claim Is Barred by the Statute of Limitations. ................15

2. Neither Hippo Nor the Third Parties Are Third-Party Eavesdroppers. ...........16

3. Plaintiff Has Not Sufficiently Pleaded the Interception of Any "Contents" of Communications by a Machine, Instrument, or Contrivance. ...................................................................................17

E. The Claims Must Be Dismissed for Lack of Personal Jurisdiction. ....................18

1. Hippo Holdings Is Not Subject to General Jurisdiction In This District. ........18

2. Hippo Holdings Is Not Subject to Specific Jurisdiction In This District.........18

3. Hippo Holdings' Parent-Subsidiary Relation With Hippo Analytics Does Not Establish Personal Jurisdiction. ............................................19

F. Plaintiff Consented to Hippo's Purported Use of the Third Parties' Tracking Technologies. ..........................................................................20

V. CONCLUSION ......................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Aldrich v. Nat'l Collegiate Athletic Ass'n*,
484 F. Supp. 3d 779 (N.D. Cal. 2020)....18

*Allen v. Quicken Loans Inc.*,
No. 17-12352 (ES) (MAH), 2018 WL 5874088 (D.N.J. Nov. 9, 2018)....13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....3

*Barnett v. First Premier Bank*,
475 F. App'x 174 (9th Cir. 2012)....12

*Bastidas v. Good Samaritan Hosp. LP*,
774 F. App'x 361 (9th Cir. 2019)....3

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....3

*Brodsky v. Apple, Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020)....9, 15, 17

*Byars v. Hot Topic, Inc.*,
656 F. Supp. 3d 1051 (C.D. Cal. 2023)....14

*Byars v. Sterling Jewelers, Inc.*,
No. 5:22-cv-01456-SB-SP, 2023 WL 2996686 (C.D. Cal. Apr. 5, 2023)....5, 6, 15

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010)....11

*Carolus v. Nexstar Media Inc.*,
No. 24-cv-07790-VC, 2025 WL 1338193 (N.D. Cal. Apr. 9, 2025)....5

*Carrico v. City & Cnty. of San Francisco*,
656 F.3d 1002 (9th Cir. 2011)....4

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015)....9

*Cole v. Quest Diagnostics, Inc.*,
No.: 2:23-cv-20647-WJM, 2025 WL 88703 (D.N.J. Jan. 14, 2025)....16

*Contreras v. Nationstar Mortg. LLC*,
No. 2:16-cv-00302-MCE-EFB, 2019 WL 688198 (E.D. Cal. Feb. 19, 2019)....16

*Corcoran v. CVS Health Corp.*,
169 F. Supp. 3d 970 (N.D. Cal. 2016) ....................18

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ....................18

*Doe v. Kaiser Foundation Health Plan, Inc.*,
No. 23-cv-02865-EMC, 2024 WL 1589982 ....................8

*In re DoubleClick Inc. Privacy Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001) ....................11

*In re Facebook Internet Tracking Litig.*,
140 F. Supp. 3d 922 (N.D. Cal. 2015) ....................5, 7, 17

*Fanucci v. Allstate Ins. Co.*,
638 F. Supp. 2d 1125 (N.D. Cal. 2009) ....................15

*Gladstone Realtors v. Village of Bellwood*,
441 U.S. 91 (1979) ....................5

*Gonzalez v. Planned Parenthood of L.A.*,
759 F.3d 1112 (9th Cir. 2014) ....................3

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ....................8, 17

*Hammerling v. Google, LLC*,
No. 3:21-cv-09004-CRB, 2024 WL 937247 (9th Cir. 2024) ....................22

*Hanson v. Denckla*,
357 U.S. 235 (1958) ....................4

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022) ....................5

*Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*,
326 U.S. 310 (1945) ....................4

*Ji v. Naver Corp.*,
No. 21-cv-05143-HSG, 2023 WL 6466211 (N.D. Cal. Oct. 3, 2023) ....................6

*Jones v. Peloton Interactive, Inc.*,
720 F. Supp. 3d 940 (S.D. Cal. 2024) ....................9

*Khamooshi v. Politico LLC*,
No. 24-cv-07836-SK, 2025 WL 1408896 (N.D Cal. May 13, 2025) ....................6

*Khoja v. Orexigen Therapeutics, Inc.*,
498 F. Supp. 3d 1296 (S.D. Cal. 2020) ....................20

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018) ....................20

*LaCourt v. Specific Media, Inc.*, No. SACV 10–1256–GW(JCGx), 2011 WL 1661532 (C.D. Cal. Apr. 28, 2011) ....................7

*Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047 (N.D. Cal. 2025) ....................11, 20

*Licea v. Vitacost, Inc.*, 683 F. Supp. 3d 1118 (S.D. Cal. 2023) ....................14

*Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018 (9th Cir. 2003) ....................5

*Lima v. Am. Home Mortg. Servicing, Inc.*, No. C 09–3561 CW, 2010 WL 144810 (N.D. Cal. Jan. 11, 2010) ....................12

*Martinez v. Mentavi, Inc.*, No. 1:25-cv-00228-RJJ-PJG (W.D. Mich. Oct. 9, 2025) ....................12

*McHenry v. Renne*, 84 F.3d 1172 (9th Cir. 1996) ....................2

*In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778 (N.D. Cal. 2022) ....................11, 12

*Mortensen v. Bresnan Commc'n., L.L.C.*, CV 10–13–BLG–RFC, 2010 WL 5140454 (D. Mont. Dec. 13, 2010)....................21

*Mujica v. AirScan Inc.*, 771 F.3d 580 (9th Cir. 2014) ....................4

*Nemcik v. Stevens*, No. 16-cv-00322-BLF, 2017 WL 2834120 (N.D. Cal. June 30, 2017) ....................4

*Picot v. Weston*, 780 F.3d 1206 (9th Cir. 2015) ....................18

*Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125 (9th Cir. 2022)....................11

*Prometheus Dev. Co. v. Everest Props.*, 289 F. App'x 211 (9th Cir. 2008) ....................3

*Prudencio v. Midway Importing, Inc.*, 831 F. App'x 808 (9th Cir.2020) ....................19

*Ranza v. Nike, Inc.*, 793 F.3d 1059 (9th Cir. 2015) ....................19

*Rodriguez v. Ford Motor Co.*,
722 F. Supp. 3d 1104 (S.D. Cal. Mar. 21, 2024) ....................17

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir.2004) ....................18

*Sidorov v. Transamerica Life Ins. Co.*,
No. 2:17-cv-00002-KJM-DB, 2018 WL 4214913 (E.D. Cal. Sept. 5, 2018) ....................15, 16

*Silver v. Stripe, Inc.*,
No. 4:20-cv-08196-YGR, 2021 WL 3191752 (N.D. Cal. July 28, 2021) ....................22

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017) ....................10, 20

*Sussman v. Am. Broad. Cos., Inc.*,
186 F.3d 1200 (9th Cir. 1999) ....................11

*Svenson v. Google, Inc.*,
65 F. Supp. 3d 717 (N.D. Cal. 2014) ....................10

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 ....................8

*Thomasson v. GC Servs. Ltd.*,
321 F. App'x 557 (9th Cir. 2008) ....................16

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ....................3

*United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Constr. Trades Dep't*,
911 F. Supp. 2d 1118 (E.D. Wash. 2012), *aff'd sub nom.* 770 F.3d 834 (9th Cir. 2014) ....................4, 5

*United States v. Reed*,
575 F.3d 900 (9th Cir. 2009) ....................9

*Adomitis ex rel. United States v. San Bernardino Mountains Cmty. Hosp. Dist.*,
816 F. App'x 64 (9th Cir. 2020) ....................5

*Williams v. Yamaha Motor Co.*,
851 F.3d 1015 (9th Cir. 2017) ....................19

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) ....................21

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) ....................9, 10

**State Cases**

*Fox v. Ethicon Endo-Surgery, Inc.*,
35 Cal. 4th 797, 27 Cal. Rptr.3d 661, 110 P.3d 914 (2005) ....................15

*Gutierrez v. Mofid*,
39 Cal. 3d 892 (Cal. 1985)....................16

*Rogers v. Ulrich*,
52 Cal. App. 3d 894 (Cal. Ct. App. 1975) ....................16

**Federal Statutes**

18 U.S.C. § 2510(4) ....................8

18 U.S.C. § 2510(8) ....................9

18 U.S.C. § 2511(1)(a)....................7

18 U.S.C. § 2511(2)(c)....................8, 20

18 U.S.C. § 2511(2)(d) ....................10

**State Statutes**

CA Fin. Code § 4057(e)(1)-(2) ....................12

CA Penal Code § 631(a) .................... *passim*

**Other Authorities**

16 C.F.R. § 313 ....................13

Federal Rule of Civil Procedure 8(a) ....................2, 3, 4

Federal Rule of Civil Procedure 12(b)(1) ....................3, 5

Federal Rule of Civil Procedure 12(b)(2) ....................3, 18, 19

Federal Rule of Civil Procedure 12(b)(6) ....................3, 7, 14

Federal Rule of Evidence 201(b) ....................20

## I. INTRODUCTION

Plaintiff claims that Hippo Analytics Inc., a licensed property and casualty insurance agent, disclosed her personally identifiable information ("PII") to third parties LinkedIn and Google (the "Third Parties") via tracking technology (like pixels) on Hippo's website, www.hippo.com (the "Website"), after she requested a quote for homeowner's insurance. Plaintiff *never details* what particular private information about her that Hippo purportedly sent to Third Parties. Rather, she generically claims that Hippo violated federal and state wiretapping laws.

Plaintiff fails to state a claim for six independently dispositive reasons. First, Plaintiff's allegations are so barebones that they fail to meet Rule 8's basic pleadings standard. Second, Plaintiff lacks standing because she has not alleged an injury in fact. Her generic allegations are not specific enough to show why she had a reasonable expectation of privacy that was purportedly invaded. Third, Plaintiff fails to state a federal wiretapping claim under the Electronic Communications Privacy Act ("ECPA") because: (i) Plaintiff fails to allege an interception by a Third Party; (ii) the alleged information shared with a Third Party does not constitute the "contents" of a communication; and (iii) one party (Hippo) consented to the communication—and no exception applies. Fourth, Plaintiff's California Invasion of Privacy Act ("CIPA") claim fails because: (i) it is barred by the applicable statute of limitations; (ii) neither Hippo nor any third parties are "eavesdroppers" to the communication; and (iii) like ECPA, the alleged information shared with a Third Party does not constitute the "contents" of a communication. Fifth, Hippo Holdings, Inc., a holding company with no employees or responsibility for issuing insurance, should be dismissed for lack of personal jurisdiction. Finally, Plaintiff consented to Hippo's sharing of information with third parties via website tracking technology. For these reasons, Plaintiff's Complaint should be dismissed with prejudice.

## II. BACKGROUND

Hippo Analytics is a licensed property and casualty insurance agent that provides home insurance quotes and policies to individuals throughout the United States. Compl. ¶ 11. Plaintiff's purported class action against Hippo claims to be on behalf of all persons both nationwide and in California "who, during the class period, maintained a LinkedIn and/or Google account and requested an insurance quote or purchased an insurance policy on the [Hippo] Website." *Id.* ¶ 124.

Plaintiff asserts that Hippo "disclose[s] information provided by consumers on insurance policy quote requests to LinkedIn Corporation ('LinkedIn') and Google LLC ('Google')." *Id.* ¶ 3. As to LinkedIn, Plaintiff alleges that LinkedIn developed the LinkedIn Insight Tag—"a JavaScript-based code" that can be embedded into a website to collect information about website users for advertising purposes. *Id.* ¶¶ 44, 47, 48. With respect to Google, Plaintiff alleges that "Google Analytics is incorporated into third-party websites and apps," by adding "a small piece of JavaScript measurement code[.]" *Id.* ¶ 75. Plaintiff alleges that the code "immediately intercepts a user's interaction with the webpage every time the user visits it, including what pages they visit and what they click on." *Id.*

Despite alleging that Hippo "employed the services of the Third Parties and their Pixels on each and every page of the [completed] questionnaire" to receive a quote, the only PII that Plaintiff alleges the Third Parties *might have* obtained is not actually PII. Instead, it relates to readily available information that is *neither sensitive nor personally-identifying in nature*—*e.g.*, address, property type, when a user would like to start an insurance policy, and whether a user wants to have a call with an insurance representative. *Id.* ¶¶ 95, 101–09. Plaintiff fails to allege that any of this information was actually shared with the Third Parties, including what precisely of her own information was shared.

Moreover, although Plaintiff baldly contends that "[s]uch disclosures are an invasion of privacy, lead[ing] to harassing advertising," *id.* at ¶ 114, Plaintiff never details how she was harmed by these putative disclosures, whether she had an expectation of privacy, what particular information was disclosed about her, or whether she even experienced targeted advertising as a result of these purported disclosures. Plaintiff's anemic pleading fails to support the causes of action alleged and, as a result, the Complaint should be dismissed.

## III. <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011) (quoting Fed. R. Civ. P. 8(a)). "Something labeled a complaint but written . . . without simplicity, conciseness and clarity as to whom plaintiffs are suing *for what wrongs*, fails to perform the essential functions of a complaint," under Rule 8. *McHenry v. Renne*, 84 F.3d 1172, 1180 (9th Cir. 1996) (emphasis added). The failure to

comply with Rule 8's "short and plain statement" clearly identifying the wrong alleged against the defendant is a basis for dismissal itself and is not dependent on whether the complaint is wholly without merit. *See id.* Here, while Plaintiff spills much ink on the ills of tracking codes on websites, there is a paucity of any allegations as to, among other things, the exact PII of Plaintiff's that purportedly was shared with Third Parties.

Moreover, under Federal Rule of Civil Procedure 12(b)(1), Plaintiff bears the burden of demonstrating Article III standing for each claim alleged and form of relief sought. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). To establish standing, Plaintiff must demonstrate a "personal stake" in the dispute. *Id.* at 423. She must show: "(i) that [s]he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* (citation omitted). Plaintiffs must establish concrete injury even for a statutory violation. *Id.* at 424–27. Here again, there are no allegations of any concrete injury to Plaintiff.

Independently, Federal Rule of Civil Procedure 12(b)(6), provides that a complaint must be dismissed when it fails to contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Specifically, a claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[C]ourts are not bound to accept as true a legal conclusion couched as a factual allegation." *Prometheus Dev. Co. v. Everest Props.*, 289 F. App'x 211, 213 (9th Cir. 2008) (internal citations omitted). The court is similarly not obligated to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Bastidas v. Good Samaritan Hosp. LP*, 774 F. App'x 361, 363 (9th Cir. 2019). Nor must a court "accept as true allegations that contradict matter properly subject to judicial notice or by exhibit." *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115 (9th Cir. 2014) (citations omitted). Plaintiff patently fails to allege a plausible claim.

In addition, under Federal Rule of Civil Procedure 12(b)(2), the due process test for personal jurisdiction requires that a defendant have minimum contacts with the forum state such that the

maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (citing *Int'l Shoe Co.*, 326 U.S. at 319). Here, there are no allegations to support personal jurisdiction against Hippo Holdings.

Finally, dismissal without leave to amend is appropriate if "amendment would be futile." *Carrico v. City & Cnty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011). An amendment is futile when "no set of facts can be proved . . . that would constitute a valid and sufficient claim[.]" *Nemcik v. Stevens*, No. 16-cv-00322-BLF, 2017 WL 2834120, at *9 (N.D. Cal. June 30, 2017) (citation omitted). Here, Plaintiff cannot cure the defects of her Compliant. It should be dismissed with prejudice.

## IV. <u>ARGUMENT</u>

### A. <u>Plaintiff Fails to Meet Basic Rule 8 Pleading Requirements.</u>

Plaintiff's sparse allegations about her own experiences do not meet Rule 8's basic pleading requirements, nor do they get her over the threshold to conduct discovery. To determine whether Rule 8(a)(2) is satisfied, courts look to the elements of the asserted claim as defined by statute or precedent. *United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Constr. Trades Dep't*, 911 F. Supp. 2d 1118, 1123 (E.D. Wash. 2012), *aff'd sub nom.* 770 F.3d 834 (9th Cir. 2014). Plaintiff must satisfy the pleading requirements of Rule 8 *before* discovery. *Mujica v. AirScan Inc.*, 771 F.3d 580, 593 (9th Cir. 2014) (affirming dismissal under Rule 8(a)(2)). Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *United Bhd. of Carpenters*, 911 F. Supp. 2d at 1123.

Here, Plaintiff provides only bare conclusions. She alleges that Hippo purportedly disclosed her PII to LinkedIn and Google, but she fails to specify what particular information was disclosed or provide any related detail. Compl. ¶ 7. Taken together, the few factual statements concerning these purported disclosures are nothing more than the type of blatant "defendant-unlawfully-harmed-me" conclusions prohibited by Rule 8(a)(2). *United Bhd. of Carpenters*, 911 F. Supp. 2d at 1123; *see also*

*Adomitis ex rel. United States v. San Bernardino Mountains Cmty. Hosp. Dist.*, 816 F. App'x 64, 66 (9th Cir. 2020). Hippo is left guessing as to Plaintiff's precise experiences, and without more, Plaintiff cannot "unlock the doors of discovery" and proceed past a motion to dismiss. *United Bhd. of Carpenter.*, 911 F. Supp. 2d at 1123.

**B. Plaintiff Does Not Allege a Particularized and Concrete Injury-In-Fact.**

Plaintiff fails to allege any concrete injury and, as a result, lacks standing to bring her claims under Rule 12(b)(1). *In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 930 (N.D. Cal. 2015); *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003).

For standing, "the plaintiff must show that [s]he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." *In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d at 930 (quoting *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 100 (1979)). Specifically, the alleged injury-in-fact must be "concrete and particularized" and must bear a "'close relationship' to a 'harm traditionally recognized as providing a basis for a lawsuit in American courts.'" *Carolus v. Nexstar Media Inc.*, No. 24-cv-07790-VC, 2025 WL 1338193, at *1 (N.D. Cal. Apr. 9, 2025). Plaintiff cannot meet this standard.

Instead, Plaintiff generically claims that Hippo's alleged disclosures to LinkedIn and Google "are an invasion of privacy, [and] lead to harassing targeted advertising." Compl. ¶ 114. Neither claim is specific to Plaintiff herself.

First, as to an invasion of privacy claim, a plaintiff must "identify any specific personal information" that "implicates a protectable privacy interest" allegedly intercepted or disclosed to a third party. *Byars v. Sterling Jewelers, Inc.*, No. 5:22-cv-01456-SB-SP, 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023); *see also Carolus,* 2025 WL 1338193, at *1 ("the information at issue [must be] actually personal and private"). Here, Plaintiff has not identified *any* specific personal, private information that Hippo purportedly disclosed about her to the Third Parties. Instead, the Complaint references generic "website visitors" or "consumers" that *may* enter information on Hippo's website. *E.g.*, Compl. ¶¶ 2, 35, 83, 88, 94, 96. Moreover, the alleged disclosure of Plaintiff's information here comes nowhere close to what courts in this Circuit have recognized as an invasion of privacy. *See I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049 (N.D. Cal. 2022) ("basic contact information, including

one's email address, phone number, or . . . username" are "available through ordinary inquiry and observation," and are not so private that their revelation would be highly offensive to a reasonable person); *Ji v. Naver Corp.*, No. 21-cv-05143-HSG, 2023 WL 6466211, at *4 (N.D. Cal. Oct. 3, 2023) (finding no privacy injury where the type of information allegedly collected included IP addresses, device IDs, and app usage information, because the collection of such information would not "intrude[] upon Plaintiffs' reasonable expectation of privacy," in contrast to "biometric data, for instance"); *Khamooshi v. Politico LLC*, No. 24-cv-07836-SK, 2025 WL 1408896 at *3 (N.D Cal. May 13, 2025) (disclosure of IP addresses does not give rise to a privacy injury, as "there is no legally protected privacy interest in IP addresses") (citations omitted). As a result, Plaintiff has not pled injury.

Second, Plaintiff fails to allege that ***she*** specifically was the recipient of any targeted advertising due to information that Hippo purportedly disclosed to the Third Parties. Compl. ¶ 114. Generic statements about others are insufficient. *Byars*, 2023 WL 2996686, at *1. Plaintiff claims that the Third Parties were permitted to "profit from [individual's] information for targeted advertising purposes" and allegedly "*could* analyze the information and target users with advertising based on those answers." *Id.* ¶¶ 95, 111 (emphasis added). But these statements are mere speculation that the Third Parties—not even Defendants—*could* have profited from advertisements; they are devoid of any facts demonstrating that Plaintiff experienced any targeted advertising at all, let alone harassing targeted advertising. In fact, Plaintiff fails to plead any specific economic harm or other cognizable injury as a result of any of her PII purportedly collected on Hippo's Website. Even if Plaintiff had alleged that Hippo disclosed her own information (she did not), Plaintiff voluntarily disclosed much of the exact same information she now claims to be private to the Third Parties herself. *See id.* ¶¶ 6 (stating that Plaintiff provided Google with her full name, date of birth, browser information, device information, IP address, and "other personally identifiable information"); *id.* ¶ 53 (stating that Plaintiff's LinkedIn profile contains her first and last name, place of work, contact information, and "other personal details"). Without any particular allegations as to targeted advertising directed at Plaintiff specifically, she lacks standing.

Furthermore, when confronted with data privacy claims, courts in the Ninth Circuit have found "generalized assertions of economic harm based solely on the alleged value of personal information"

insufficient for standing purposes. *In re Facebook Internet Tracking Litig.*, 140 F. Supp. at 931 (despite "accept[ing] as true Plaintiffs' ascription of some degree of intrinsic value to their personal information," finding that Plaintiff did not "adequately connect this value to a realistic economic harm or loss that [was] attributable to Facebook's alleged conduct"); *see also LaCourt v. Specific Media, Inc.*, No. SACV 10–1256–GW(JCGx), 2011 WL 1661532, at *3–4 (C.D. Cal. Apr. 28, 2011) (dismissing allegations that defendant stored cookies on their computers to "target specific categories of ads at different users" because the plaintiffs had not alleged they were actually deprived of the economic value of their browsing histories). Like the allegations in *In re Facebook Internet Tracking Litig.* and *Specific Media*, the generic allegation that Hippo's actions were taken "for their own profit at the expense of their applicants' privacy" (Compl. ¶ 114) is not enough to establish standing, necessitating dismissal of Plaintiff's Complaint.

### C. <u>Plaintiff Has Not Sufficiently Stated a Claim Under the ECPA.</u>

Plaintiff's ECPA claim also should be dismissed under Rule 12(b)(6) for failure to state a claim. Under Title I of the ECPA, known as the Wiretap Act, a violation occurs when any person "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a). Plaintiff claims that "[b]y utilizing and embedding the tracking technology provided by LinkedIn and Google on its website, Defendants intentionally intercepted, endeavored to intercept, and/or procured another person to intercept, the electronic communications of Plaintiff and Class Members" in violation of the ECPA. Compl. ¶ 144. This claim fails for three independently dispositive reasons. First, no "interception" by the Third Parties occurred. Second, the allegedly intercepted information does not qualify as the "contents" of a communication under the ECPA. And third, the ECPA is a one-party consent statute, and Plaintiff fails to adequately plead facts giving rise to the crime-tort exception.

#### 1. No "Interception" By a Third Party Occurred as Required Under the ECPA.

Plaintiff's claim under the ECPA fails because Hippo is a party to any purported communications, and thus it could not have intercepted the communications. The Wiretap Act defines "intercept" as "the aural or other acquisition of the contents of any wire, electronic, or oral

communication through the use of any electronic mechanical, or other device." 18 U.S.C. § 2510(4). However, the statute expressly excludes from liability any *party* to the communication. 18 U.S.C. § 2511(2)(c) (emphasis added). Plaintiff herself alleges that Hippo is a party to the communication, stating that "[i]n order to apply for an insurance policy through the Website, applicants must share personally identifying information" with Hippo. Compl. ¶ 2. Plaintiff's allegations make clear that she willingly provided information *to* Hippo during the application process. *See, e.g., id.* ¶ 5. At no point does Plaintiff allege in the Complaint that Hippo was not authorized to receive the information.

Moreover, Plaintiff's Complaint demonstrates that the Third Parties did not improperly intercept any communications. Plaintiff describes the commonplace use of the Third Parties' analytics and advertising tools—a standard, disclosed business practice that Plaintiff was aware of—as a surreptitious interception. *E.g.*, *id.* ¶ 30. But this mischaracterizes Hippo's Website configuration. Specifically, Plaintiff admits throughout the Complaint that the Third Parties captured the same information provided by Plaintiffs to Defendants via technologies "installed on the website." *Id.* ¶¶ 75, 95–96, 102–107, 113. In other words, the data capture at issue occurs as part of the Website's direct receipt of the communications between the user and the Website, and not in between sender and receiver. *See Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 744–45 (dismissing ECPA and CIPA claims because "the third parties utilized by Home Depot were only a 'tool' used to record the conversations"). This is a routine practice that permits website operators to gather information about how to better run and manage their own websites and is not akin to surreptitious eavesdropping, which was the intended statutory purpose of ECPA. *See Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832 (N.D. Cal. 2021) ("FullSory is an extension of Noom. It provides a tool . . . that allows Noom to record and analyze its own data in aid of Noom's business") (internal citations omitted); *Doe v. Kaiser Foundation Health Plan, Inc.*, No. 23-cv-02865-EMC, 2024 WL 1589982, at *18 (a third party collecting information through a website should not "*per se* be considered an eavesdropper"). Additionally, as explained *infra* Part VI, Plaintiff was put on notice and consented to Hippo's use of the tracking technologies, so there could not be an unknown or surreptitious interception. As a result, Plaintiff's ECPA claim should be dismissed.

**2. The Information Allegedly Collected by the Third Parties Does Not Constitute the "Contents" of Communications.**

Plaintiff's ECPA claim additionally fails because Plaintiff has not sufficiently alleged that the information purportedly intercepted by the Third Parties consisted of the "contents" of communications. Under the ECPA, the "contents" of a communication are defined as "any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8). "Congress intended the word 'contents' to mean a person's intended message to another (i.e., the 'essential part' of the communication, the 'meaning conveyed,' and the 'thing one intends to convey')."' *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014).

As defined by the ECPA, "content" "does not include record information regarding the characteristics of the message that is generated in the course of the communication." *Id.* at 1107.; *see also United States v. Reed*, 575 F.3d 900, 917 (9th Cir. 2009). Record information includes information like "the name, address, and client ID number of [an] entity's customer," *In re Zynga Privacy Litig.*, 750 F.3d at 1104; "user names, passwords, and geographic location information," *Brodsky v. Apple, Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020); and a website user's "IP address," "device" information, and "web browser used," *Jones v. Peloton Interactive, Inc.*, 720 F. Supp. 3d 940, 947 (S.D. Cal. 2024). Instead, the intercepted information must "reveal the substance, purport, or meaning of [a] communication." *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1084 (N.D. Cal. 2015).

Here, Plaintiff has outlined a variety of purported "content" that Hippo allegedly intercepted with respect to the putative class, without even specifying what alleged "content" was intercepted as to her own communications. But, in any event, all of this information squarely falls into categories of record information. *See, e.g.*, Compl. ¶ 36 (home address and housing status, and status of insurance application); *id.* ¶ 75 (web pages visited, IP address, operating system, operating system version, browser, language, and screen resolution); *id.* ¶ 81 (Custom Events and URLs, device information, and User-IDs); *id.* ¶ 84 ("browser-fingerprint"). As properly characterized, this information does not "reveal the substance" of a communication, *In re Carrier IQ, Inc.*, 78 F. Supp. 3d at 1084 and thus, Plaintiff has not sufficiently pleaded the "content" requirement under the ECPA.

Additionally, "[t]here is no language in ECPA equating 'contents' with personally identifiable information. Thus, an allegation that [defendants] disclosed personally identifiable information is not equivalent to an allegation that they disclosed the contents of a communication." *In re Zynga Privacy Litig.*, 750 F.3d at 1107 (holding that a user's Facebook ID was mere record information because it simply functioned as a "name" or a "subscriber number or identity"); *see also Svenson v. Google, Inc.*, 65 F. Supp. 3d 717, 727-30 (N.D. Cal. 2014) (holding that contact information provided to Google as part of signing up for Google Wallet service was record information and not content information). Accordingly, Plaintiff cannot argue that the "contents" of a communication were intercepted merely because the information intercepted purportedly consisted of PII. Instead, this information falls into various examples that courts in this jurisdiction have held to be precluded "record" information. Plaintiff's ECPA claim therefore fails.

#### 3. ECPA Is a One-Party Consent Statute, and Plaintiff Has Failed to Sufficiently Plead That Hippo's Conduct Falls Within the Crime-Tort Exception.

Plaintiff's ECPA claim should be dismissed because ECPA is a one-party consent statute, and Plaintiff has failed to allege that Hippo is liable under any exception. Under 18 U.S.C. § 2511(2)(d), liability will not attach where "one of the parties to the communication has given prior consent" to the interception. 18 U.S.C. § 2511(2)(d); *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 955 (N.D. Cal. 2017). Here, Plaintiff's own allegations show that Hippo consented to the purported interception. *See, e.g.*, Compl. ¶ 30 (information disclosed to Third Parties "as *enabled* by Defendants" (emphasis added)); *id.* ¶ 37 ("Defendants aid, agree with, employ, or otherwise enable" the information to be shared with the Third Parties).

Recognizing this fatal flaw in Plaintiff's theory, she tries to save her claim by asserting that ECPA's crime-tort exception applies, which allows liability only where "such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d). But this exception does not apply, and Plaintiff's ECPA claim should still be dismissed.

**a. Plaintiff fails to allege that Hippo acted with the purpose of committing a separate crime or tort.**

Plaintiff has not sufficiently alleged that Hippo intended to violate ECPA, and intent to commit a crime or tort is necessary to overcome one-party consent. Specifically, to invoke the crime-tort exception, Plaintiff must plead sufficient facts to show that "the primary motivation or a determining factor in the interceptor's actions has been to injure plaintiffs tortiously." *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1057 (N.D. Cal. 2025). "The independent purpose must be 'essential to the actual execution of an illegal wiretap' . . . [and] directly facilitate the criminal conduct." *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1135–36 (9th Cir. 2022). Indeed, "[a] simultaneous tort arising from the act of recording itself is insufficient." *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010); *see also Sussman v. Am. Broad. Cos., Inc.*, 186 F.3d 1200, 1202–03 (9th Cir. 1999). Here, Plaintiff attempts to plead Hippo intended to act "in violation of the . . . GLBA, CalFIPA, and invasion of privacy, among other[]" laws, Compl. ¶ 149, but aside from this conclusory accusation, Plaintiff has failed to state any facts demonstrating *how* Hippo intended to or actually did violated these laws. For the reasons discussed *supra* Part III.C.2, Plaintiff has not sufficiently pleaded a violation of GLBA, CalFIPA, or any other law.

Rather than plead an intent to violate ECPA, Plaintiff alleges the opposite. Her focus is on Defendants' potential economic gain from the alleged disclosure of sensitive information to Third Parties. To this end, Plaintiff states that "Defendants engage in this deceptive conduct for their own profit." Compl. ¶ 114. Likewise, Plaintiff explains how the Third Parties profit from the information supposedly collected. *Id.* ¶¶ 40–46 (explanation of LinkedIn's profiting model); *id.* ¶¶ 67–69, 73, 91 (explanation of Google's profiting model). But a desire for economic gain or mere profit is insufficient to show intent for purposes of the crime-tort exception. *In re Meta Pixel Healthcare Litig.,* 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022)*; see also In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 519 (S.D.N.Y. 2001) (dismissing Wiretap Act claim upon finding "the utter lack of evidence" of tortious intent, and that DoubleClick's purpose was "to make money by providing a valued service to commercial Web sites"). Specifically, "the crime-tort exception to the Wiretap Act is inapplicable where the defendant's primary motivation was to make money, not injure plaintiffs tortiously." *In re*

*Meta Pixel Healthcare Litig.,* 647 F. Supp. 3d at 797; Opinion and Order, *Martinez v. Mentavi, Inc.*, No. 1:25-cv-00228-RJJ-PJG (W.D. Mich. Oct. 9, 2025) (dismissing ECPA claims when "the allegations show that Defendant's primary motivation when intercepting Plaintiffs' PHI data was commercial—not criminal or tortious—in nature").

Because Plaintiff fails to allege that Hippo acted with the purpose of committing an independent crime or tort, her attempt to invoke the crime-tort exception must fail.

**b. Plaintiff has not sufficiently pleaded the requirements of the GLBA, CalFIPA, or any other law as the basis for the crime-tort exception.**

Plaintiff attempts to bootstrap alleged violations of the GLBA, CalFIPA, and random other laws onto her claim that Hippo's actions fall within the crime-tort exception. In other words, Plaintiff seeks to use these statutes as predicates to satisfying the intent requirement of the crime-tort exception. However, neither the GLBA nor CalFIPA provide for private rights of action. *See Lima v. Am. Home Mortg. Servicing, Inc.*, No. C 09–3561 CW, 2010 WL 144810 at *1 (N.D. Cal. Jan. 11, 2010) (dismissing with prejudice plaintiff's claims under the Gramm-Leach-Bliley Act because "there is no private right of action under that law."); *Barnett v. First Premier Bank*, 475 F. App'x 174 (9th Cir. 2012) (affirming dismissal of plaintiff's claims because there is no private right of action under GLBA); CA Fin. Code § 4057(e)(1)-(2) ("The civil penalties provided for in this section shall be *exclusively* assessed and recovered in a civil action brought . . . by . . . [t]he Attorney General [or] [t]he functional regulator with jurisdiction over regulation of the financial institution") (emphasis added).

But even if there were private rights of action under the GLBA or CalFIPA (and there is not), Plaintiff has not sufficiently alleged that Hippo intended to or did violate the GLBA or CalFIPA, and reliance on these statutes is misplaced. Plaintiff merely concludes that "Defendants intentionally intercepted the contents of Plaintiff's and Class Members' electronic communications for the purpose of committing a criminal or tortious act in violation of the . . . GLBA, CalFIPA, and invasion of privacy, among others" without providing any support. Compl. ¶ 149. Nowhere in the Complaint does Plaintiff allege anything regarding an explicit purpose by Hippo to violate any of these laws.

**GLBA:** As a threshold matter, Plaintiff does not state what section of the GLBA Hippo has purposely violated. Plaintiff merely alleges that "Defendants violated a provision of the Gramm-

Leach-Bliley Act, 16 C.F.R. § 313," which "imposes a criminal penalty for knowingly disclosing 'nonpublic personal information' to a third party." Compl. ¶ 150. Plaintiff fails to identify which exact part of this regulation she believes Hippo violated. Plaintiff's allegation that Hippo "knowingly disclos[ed] 'nonpublic personal information' to a third party" in violations of the GLBA is conclusory and void of facts sufficient to put Hippo on notice of the law it has purportedly violated.[1]

When Plaintiff does rely on specific regulations, it is confusing, overbroad, and misplaced. *Id.* §§ 22–25. Plaintiff copies and pastes the definitions of "nonpublic personal information" and "personally identifiable information" word-for-word into the Complaint, but fails to sufficiently plead what information was specifically collected and shared by Hippo with the Third Parties, let alone that the information constitutes "non-public personal information" and "personally identifiable information" as defined in 16 C.F.R. §§ 313.3(n)–(o). After stating the definitions, Plaintiff concludes "[t]hus, Plaintiff's and Class Members' 'nonpublic personal information' is confidential, under both federal and California law." Compl. ¶¶ 22–24, 30. Plaintiff does not identify what information she claims to be the protected "nonpublic personal information," or under which provision of 16 C.F.R. § 313.3 the "nonpublic personal information" falls. Plaintiff also never pleads that she actually obtained an insurance product or service through Hippo, so it is not clear how any "personally identifiable information" collected relates to "obtain[ing] a financial product or service from" Hippo or a "transaction" involving Hippo as required under 16 C.F.R. § 313.3(o)(1). *See id.* ¶ 23; *Allen v. Quicken Loans Inc.*, No. 17-12352 (ES) (MAH), 2018 WL 5874088, at *7 (D.N.J. Nov. 9, 2018) (dismissing ECPA claim predicated on a violation of the GLBA because plaintiff "never procured financial services" from the defendant, and therefore, she was not a consumer for purposes of the law). GLBA cannot form the basis of the exception.

**<u>CalFIPA</u>:** Plaintiff similarly fails to allege that Hippo intended to violate CalFIPA. Plaintiff again merely outlines a laundry list of definitions that supposedly apply to her CalFIPA allegations, but fails to plead facts that bridge the gap between these definitions and how they apply to Hippo or to information that she disclosed to Hippo. Compl. ¶¶ 27–28. Specifically, Plaintiff fails to plead any

[1] At one point, Plaintiff points to 16 C.F.R. § 313.3 as providing the basis for the violation of the GLBA, *see id.* ¶ 3, but this regulation is merely a list of applicable definitions.

facts that indicate how the information at issue qualifies as "personally identifiable financial information" as defined by CalFIPA, why Plaintiff should be defined as a "consumer" under the statute, or whether there was actual disclosure of the allegedly "personally identifiable financial information" without notice or consent from Plaintiff. Instead, she only provides the conclusory allegation that "Plaintiff's and Class Members' 'nonpublic personal information' is confidential, under . . . California law." *Id.* ¶ 30. This statement is simply not enough to meet the required pleading standards. CalFIPA cannot form the predicate for her to adequately allege the exception.

**Other Laws:** Plaintiff has not sufficiently pleaded that Hippo acted with the purpose of violating any other laws; her attempt to throw in this kitchen sink does not save her ECPA claim.[2]

### D. Plaintiff Has Not Sufficiently Stated a Claim Under the CIPA.

Plaintiff's second cause of action, violation of CIPA under § 631(a) of the California Penal Code, fails to state a claim under Rule 12(b)(6). Plaintiff alleges that the Third Parties "willfully and without the consent of all parties to the communication . . . read, attempted to read, and/or learned the contents or meaning of electronic communications of Plaintiff and members of the California Subclass, on the one hand, and Defendants, on the other[.]" Compl. ¶ 162. § 631(a) contains four clauses which impose liability for "distinct and mutually independent patterns of conduct." *Licea v. Vitacost, Inc.*, 683 F. Supp. 3d 1118, 1121 (S.D. Cal. 2023). Under the first three clauses, Plaintiff must show that Hippo was a third party who was *not* a participant in the communication. *Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1066–67 (C.D. Cal. 2023). Plaintiff has expressly alleged that Hippo was a participant in the communication, *see, e.g.*, Compl. ¶ 162, so any claims under the first three clauses of § 631(a) cannot stand.

Accordingly, Plaintiff can only seek liability under the fourth clause, which imposes liability on any person who "by means of any machine, instrument, or contrivance, or in any other manner . . .

[2] Plaintiff passively mentions allegations of "invasion of privacy," *Id.* ¶¶ 114, 149, but fails to allege *any* facts explaining what specific conduct gives rise to the violation, what information was "invaded," or more generally how Hippo invaded Plaintiff's privacy. Plaintiff also claims Hippo purportedly violated the California Insurance Information and Privacy Act ("IIPA"). To support this claim, Plaintiff implements only three short paragraphs reciting the statute—none of which provide any particularized facts sufficient to show how Hippo's alleged conduct falls under the IIPA. *Id.* ¶¶ 32–34. Accordingly, these statutes cannot serve as the basis for Plaintiff's crime-tort exception.

aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done" an unauthorized wiretap. Cal. Penal Code § 631(a). Under this clause, the "dispositive question is whether [the third-party vendor] constitutes a third-party eavesdropper." *Byars*, 656 F. Supp. 3d at 1066–67. However, even under this fourth prong, Plaintiff's claims must be dismissed for three independent reasons. First, the statute of limitations bars Plaintiff's CIPA claim. Second, the Third Parties are not third-party eavesdroppers. And third, just as with ECPA, the allegedly intercepted information cannot qualify as the "contents" of a communication under CIPA.

**1. Plaintiff's CIPA Claim Is Barred by the Statute of Limitations.**

**a. The statute of limitations for Plaintiff's CIPA claim has run.**

Plaintiff's CIPA claim is time barred, and it cannot be tolled. "Under the CIPA, the applicable statute of limitations is one year." *Brodsky,* 445 F. Supp. 3d at 134. "Generally speaking, a cause of action accrues at the time when the cause of action is complete with all of its elements." *Fanucci v. Allstate Ins. Co.*, 638 F. Supp. 2d 1125, 1133 (N.D. Cal. 2009) (internal citations omitted). Here, Plaintiff's claims fully accrued in September 2023, when Plaintiff allegedly applied for a homeowner's insurance quote on the Website. Compl. ¶ 5. Plaintiff does not allege that she accessed the Website at any point after September 2023. All of the elements for a claim under CIPA were complete at that time, and any purported injury to Plaintiff also occurred at that time. Accordingly, Plaintiff was required to bring her CIPA claim by September 2024; Plaintiff failed to do so.

**b. The discovery rule does not apply.**

Plaintiff cannot save her CIPA claim through the "discovery rule." Compl. ¶¶ 122–23. Under this rule, accrual of a cause of action is postponed "until the plaintiff discovers, or has reason to discovery, the cause of action." *Fanucci*, 638 F. Supp. 2d at 1133 (citation omitted). California law establishes that "[a] plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Sidorov v. Transamerica Life Ins. Co.*, No. 2:17-cv-00002-KJM-DB, 2018 WL 4214913, at *5 (E.D. Cal. Sept. 5, 2018) (quoting *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808, 27 Cal. Rptr.3d 661, 110 P.3d 914 (2005)). A plaintiff's claims are not tolled merely because an attorney discovers the ability

to bring the claims at a later point. *See Contreras v. Nationstar Mortg. LLC*, No. 2:16-cv-00302-MCE-EFB, 2019 WL 688198, at *4 (E.D. Cal. Feb. 19, 2019) (denying request to toll statute of limitations when plaintiff merely alleged that defendant "continues to hide the true nature and extent of [their] fee scheme," and that he did not know of his injury until he "consulted with legal counsel"); *Gutierrez v. Mofid*, 39 Cal. 3d 892, 897–98 (Cal. 1985) ("the fact that an attorney has not yet advised [plaintiff] does not postpone commencement of the limitations period").

Here, Plaintiff claims that she "first discovered that Defendant had collected and assisted third parties in intercepting her information on or around July 2025," and that "[t]he earliest that Plaintiff or Class members, acting with due diligence, could have reasonably discovered Defendant's conduct would have been shortly before the filing of the [Complaint] in this matter." Compl. ¶¶ 122–23. But aside from this conclusory statement, Plaintiff has not demonstrated why neither she nor any other putative class members had "the inability to have made earlier discovery despite reasonable diligence." *Sidorov*, 2018 WL 4214913 at *5. Nor does Plaintiff specifically allege the "time and manner" of how Plaintiff discovered the facts underlying her claim. *Id.* Plaintiff has not adequately pled that her CIPA claim should be tolled and, accordingly, it should be barred by CIPA's statute of limitations.

**2. Neither Hippo Nor the Third Parties Are Third-Party Eavesdroppers.**

Plaintiff has not sufficiently pleaded that either Hippo or the Third Parties are "eavesdroppers" to any communications as required by the CIPA. The purpose of § 631(a) is to "prevent[] eavesdropping and other invasions of privacy, thus suggesting that participant recording was not meant to be included." *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 898–99 (Cal. Ct. App. 1975). "California courts interpret 'eavesdrop' . . . to refer to a third party secretly listening to a conversation between two other parties." *Thomasson v. GC Servs. Ltd.*, 321 F. App'x 557, 559 (9th Cir. 2008). Eavesdropping does not occur when a website user is "communicating directly with the alleged eavesdropper because the users' browsers [are] sending [] requests directly to [third party's] servers." *Cole v. Quest Diagnostics, Inc.*, No.: 2:23-cv-20647-WJM, 2025 WL 88703, at *2 (D.N.J. Jan. 14, 2025) (dismissing CIPA claims for lack of eavesdropping with use of third-party tools).

Here, Plaintiff repeatedly alleges that the Third Parties' tracking technologies embedded on Hippo's website routed communications to the Third Parties' servers. But there is nothing secret or

unintended about this alleged communication with the Third Parties, and it is all done via Hippo's Website. There is no secret eavesdropping or interception. For instance, with regard to Google, the Complaint states that "when interacting with the Website, an HTTP Request is sent to Hippo's server, and that server sends an HTTP Response including the Markup that displays the website visible to the applicant and Source Code, including Google Analytics." Compl. ¶ 76. Likewise, as to LinkedIn, Plaintiff alleges that, "[w]hen a user who has signed in to LinkedIn . . . is browsing a website where the LinkedIn Insight Tag has been embedded, an HTTP request is sent using cookies, which includes information about the user's actions on the website." *Id.* ¶ 49. Plaintiff's allegations thus make clear that the Third Parties' technologies are an intentional part of the Website itself, and therefore, there was no separate eavesdropping. *See Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1121–22 (S.D. Cal. Mar. 21, 2024) (dismissing CIPA claims for lack of eavesdropping when Plaintiff alleged that a third party's chat service was "plugged into" Defendant's website, and shared data with Meta and its subsidiaries). Even under Plaintiff's allegations, there was no separate eavesdropping.

**3. Plaintiff Has Not Sufficiently Pleaded the Interception of Any "Contents" of Communications by a Machine, Instrument, or Contrivance.**

Like with ECPA, Plaintiff has not sufficiently alleged that the Third Parties intercepted information that constitutes the "contents" of communications. "Section 631(a) prohibits the unauthorized access of the *contents* of any communications." *Graham v. Noom, Inc.*, 533 F. Supp at 833 (citing Cal. Penal Code § 631(a)) (emphasis added). "The 'contents' of a communication under CIPA and the federal Wiretap Act are the same." *Id.* Therefore, "[t]he analysis for a violation of CIPA is the same as that under the federal Wiretap Act." *Brodsky* 445 F. Supp. 3d at 127. Accordingly, for the same reasons as set forth in Part III.B, the information that Plaintiff purports was intercepted is not communication "contents." Rather, it is record information that is not covered by the CIPA.[3]

For all of these reasons, Plaintiff's CIPA claim must be dismissed.

---

[3] Even if Plaintiff had sufficiently alleged that the Third Parties obtained the "contents" of a communication, Plaintiff has not sufficiently alleged that the Third Parties did so using a "machine, instrument, [or] contrivance" as required by Section 631(a). Cal. Penal Code § 631(a). While courts have recognized that a computer qualifies as a "machine," *see In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d at 922, 937, Plaintiff does not explain how the Third Parties' tracking technologies fall into one of the three categories enumerated in the statute.

**E. <u>The Claims Must Be Dismissed for Lack of Personal Jurisdiction.</u>**

Plaintiffs' claims against Hippo Holdings should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction because Hippo Holdings lacks contacts in California. Personal jurisdiction can be established through either general jurisdiction or specific jurisdiction. *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015). Hippo Holdings is not subject to this Court's personal jurisdiction as a matter of general or specific jurisdiction, and thus the exercise of personal jurisdiction over Hippo Holdings would not comport with the requirements of due process. Accordingly, all claims against Hippo Holdings should be dismissed for this additional reason.

**1. Hippo Holdings Is Not Subject to General Jurisdiction In This District.**

General jurisdiction requires the defendant to have contacts with the forum state that are so "continuous and systematic" so as to render the defendant "essentially at home in the forum State." *Aldrich v. Nat'l Collegiate Athletic Ass'n*, 484 F. Supp. 3d 779, 790 (N.D. Cal. 2020) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)). Hippo Holdings does not conduct continuous and systematic general business within California that would support the exercise of general jurisdiction. Hippo Holdings is a holding company and provides no products or services in California. Self Decl. ¶¶ 7, 8. Moreover, Hippo Holdings does not own or lease any real property or facilities in California; does not maintain an office to do business in California; and is not doing business in California. *Id.* ¶¶ 5–8. For these reasons, there is no general jurisdiction over Hippo Holdings.

**2. Hippo Holdings Is Not Subject to Specific Jurisdiction In This District.**

Likewise, Plaintiff has not met the three requirements to establish specific jurisdiction over Hippo Holdings: "(1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum […]; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable." *Corcoran v. CVS Health Corp.,* 169 F. Supp. 3d 970, 979 (N.D. Cal. 2016) (citing *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir.2004)).

First, Hippo Holdings did not—and does not—purposefully conduct business or direct activities toward California. In fact, Hippo Holdings is merely a holding company and does not provide products to consumers or conduct other business toward California. Self Decl. ¶¶ 7, 8. Second, Plaintiff's claims arise exclusively out of interactions with the Website, which is operated by Hippo Analytics, an entirely separate entity. Finally, because Hippo Holdings has not purposefully availed itself of the privilege of conducting activities in California, the exercise of personal jurisdiction over it would not be reasonable. For these reasons, the Complaint should be dismissed under Rule 12(b)(2).

**3. Hippo Holdings' Parent-Subsidiary Relation With Hippo Analytics Does Not Establish Personal Jurisdiction.**

Plaintiff assumes that Hippo Holdings' parent-subsidiary relationship with Hippo Analytics provides personal jurisdiction over Hippo Holdings. This argument is flawed. The mere fact of a parent-subsidiary relationship is insufficient on its own to establish personal jurisdiction for the parent. *See Williams v. Yamaha Motor Co*., 851 F.3d 1015, 1021 (9th Cir. 2017) (affirming motion to dismiss in part for failure to establish personal jurisdiction over parent company); *Ranza v. Nike, Inc*., 793 F.3d 1059, 1070 (9th Cir. 2015) (same); *Prudencio v. Midway Importing, Inc*., 831 F. App'x 808, 810 (9th Cir.2020). Plaintiff is seeking to use a subsidiary's activities to extend personal jurisdiction to a parent must show that the two entities are "alter egos" or otherwise show that the subsidiary's activities are so dominated by the parent that it acts as its agent. *Williams*, 851 F.3d at 1021.

Plaintiff has failed to allege any facts as to any "alter ego" relationship between Hippo Holdings and Hippo Analytics. In fact, outside of their principal place of business and place of incorporation, Plaintiff does not allege a *single* fact regarding the relationship between the two entities. Compl. ¶¶ 8–9. Nor does Plaintiff allege facts even hinting at Hippo Analytics' activities being "so dominated" by Hippo Holdings, Inc., rendering it its agent. Plaintiff cannot plead such facts because Hippo Holdings is merely a holding company with no employees and which maintains no responsibility for the Website at issue. Therefore, the Complaint fails for lack of personal jurisdiction under Rule 12(b)(2).

**F. <u>Plaintiff Consented to Hippo's Purported Use of the Third Parties' Tracking Technologies.</u>**

Plaintiff's claims under both the ECPA and CIPA should be barred because Plaintiff consented to the use of the Tracking Technologies. *See* 18 U.S.C. § 2511(2)(c) ("It shall not be unlawful under this chapter for a person . . . to intercept a wire, oral, or electronic communication, where . . . one of the parties to the communication has given prior consent to such interception"); Cal. Penal Code § 631(a) ("Any person who . . . willfully and without the *consent* of all parties to the communication . . . (emphasis added)); *Lakes.*, 777 F. Supp. at 1057–58 (dismissing ECPA and CIPA claims upon finding that plaintiff consented to its privacy policies); *Smith v. Facebook, Inc.*, 262 F. Supp at 955 (holding that Plaintiffs' consent barred causes of action under ECPA and CIPA).

Plaintiff consented to the use of the Tracking Technologies through notice of Hippo's Privacy Policy, Terms and Conditions, Cookie Banner, Cookie Preferences Pop-Up, and Do Not Sell or Share My Personal Information Link, (together, the "Website Privacy Disclosures"), all of which should be judicially noticed by this Court. Under Federal Rule of Evidence 201(b), "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Accordingly, "a court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). "'[A]s a general matter, websites and their contents may be proper subjects for judicial notice' provided that the party submits a copy of the relevant webpage to the court." *Lakes*, 777 F. Supp. 3d at 1053. Here, the Website Privacy Disclosures are all publicly-available on Hippo's Website and included as exhibits to this Motion to Dismiss. *See* Exs. A–F. Therefore, information contained in the Website Privacy Disclosures can be "accurately and readily determined" pursuant to Federal Rule of Evidence 201(b).[4]

---

[4] Alternatively, Hippo can properly rely on the Website Privacy Disclosures because they are incorporated by reference into Plaintiff's Complaint. "Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Khoja v. Orexigen Therapeutics, Inc.*, 498 F. Supp. 3d 1296, 1305 (S.D. Cal. 2020). Here, Plaintiff's Complaint references and discusses Hippo's Website in countless paragraphs, and all of Plaintiff's claims derive

When Plaintiff first visited Hippo's Website, she was presented with a cookie banner that is also visible today that specifically informed her and all website visitors that cookies and tracking technologies are being used on the site, with a link to the Privacy Policy, which contained more detailed disclosures about data sharing to Third Parties. Rohol Decl. ¶ 3, 4; Exs. A, B, C.

Hippo's cookie banner (the "Cookie Banner") clearly and unambiguously states:

> Hippo uses cookies to optimize your website experience, analyze our website traffic and performance, and advertise to you online. You may review our privacy policy below for more information or opt out of the sale or sharing of your personal information with behavioral ads by clicking on the cookie settings.

Rohol Decl. ¶ 3; Ex. B. The banner also includes a link to Hippo's Privacy Policy. Rohol Decl. ¶ 4; Ex. B. A user then has an option to either choose "Accept Cookies" or choose "Cookie Preferences." Rohol Decl. ¶ 5; Ex. B. Upon selecting the latter (the "Cookies Preferences Pop-Up"), a user is informed:

> Hippo uses analytics and behavioral advertising cookies on its website. The use of analytics or behavioral advertising cookies may be considered to be a "sale" or "sharing" of personal information under applicable laws. If you would like, you can opt out of the use of these types of cookies using the settings below. Please note that any choice you make here will only affect this website on this browser. You may also read more about these cookies and related issues on our Privacy Policy.

Rohol Decl. ¶ 5; Ex. D. A user may then choose to opt out of "Interest-Based Advertising Cookies" and/or "Performance Cookies." Rohol Decl. ¶ 6; Ex. D.

By continuing to use the Website and failing to take any action to modify her cookie preferences or request to opt-out of the sale or sharing of personal information, Plaintiff consented to Hippo's collection and use of her personal information. *See In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1030 (N.D. Cal. 2014) (dismissing Wiretap Act claim upon finding that users were on notice of data collection by third party and thus consented to the collection of such data by continuing to use their email accounts); *Mortensen v. Bresnan Commc'n., L.L.C.*, CV 10–13–BLG–RFC, 2010 WL

---

from her interactions with the Website and the technology embedded within it. *See, e.g.*, Compl. ¶¶ 1, 2, 5, 6, 11, 35–39, 64, 66, 75–77, 81–82, 92–110. The Website Privacy Disclosures are all a part of Hippo's Website, and therefore, they are all incorporated into the Complaint by reference.

5140454, at *5 (D. Mont. Dec. 13, 2010) (dismissing ECPA claim because "through the *OnLine Subscriber Agreement*, the *Privacy Notice* and the NebuAd link on Bresnan's website, Plaintiffs did know of the inception and through their continued use of Bresnan's Internet Service, they gave or acquiesced their consent"); *Silver v. Stripe, Inc.*, No. 4:20-cv-08196-YGR, 2021 WL 3191752, at *4–*5 (N.D. Cal. July 28, 2021) (dismissing Wiretap claims upon a finding that "plaintiffs were 'provided with an opportunity to review the terms' of the privacy policy" and therefore consented "each time they placed an order"); *Hammerling v. Google, LLC*, No. 3:21-cv-09004-CRB, 2024 WL 937247, at *2 (9th Cir. 2024) (dismissing breach of contract and invasion of privacy claims when Google affirmatively "disclosed the challenged data collection practices in its Privacy Policy").

In addition to the prominent and conspicuous banner on Hippo's Website that contains a link to Hippo's Privacy Policy, Website users also will find a link to Hippo's Privacy Policy in the footer of each page of Hippo's Website. Rohol Decl. ¶¶ 7, 8. Among other disclosures, this Privacy Policy states that Hippo may: (1) collect personal information automatically using cookies and similar online technologies, (2) share personal information for marketing purposes, (3) use analytics services provided by others, and (4) use advertising services provided by others. It also states that a user can manage their browser cookies and opt out of interest-based advertising. Ex. C at 1–2. The Privacy Policy explicitly states that Hippo may use tools provided by LinkedIn and Google for advertising and analytical purposes, including to "collect information to help [Hippo] analyze users and how they use [Hippo's] Services." *Id.* at 8.

Furthermore, in the footer of each page of Hippo's Website, users will also find a link to "Do Not Sell or Share My Personal Information" (the "Do Not Sell or Share My Personal Link") where a user can opt-out of use of tracking technologies, like cookies, Rohol Decl. ¶ 8; Ex. E, and a link to Hippo's Terms and Conditions in the footer on each page of Hippo's Website, Rohol Decl. ¶ 7. The Terms and Conditions incorporate the Privacy Policy and affirm that Hippo may collect personal information. Ex. F at 2, 7. The Terms and Conditions state that "[b]y accessing or using" the Website, a user "agree[s] to be bound by these Terms and Conditions . . . as well as the Hippo Privacy Policy, which is hereby incorporated into these Terms and Conditions." Ex. F at 2.

Through each of these Website Privacy Disclosures, Plaintiff was informed that Hippo shared information with the Third Parties via Website tracking technologies, and she therefore consented to these practices.

## V. <u>CONCLUSION</u>

For these reasons, the Court should dismiss the Complaint with prejudice and without leave to amend.

Dated: October 27, 2025

**WILLKIE FARR & GALLAGHER LLP**

By: *<u>/s/ Debra Bogo-Ernst</u>*

Laura Leigh Geist (SBN 180826)
333 Bush Street, 34th Floor
San Francisco, CA 94104

Susan Rohol (SBN 351888)
2029 Century Park East
Los Angeles, CA 90067-2905

Debra Bogo-Ernst *(Pro Hac Vice)*
Amy Orlov *(Pro Hac Vice)*
300 North LaSalle Drive
Chicago, IL 60654

*Attorneys for Defendants*
*HIPPO HOLDINGS, INC.*
*and HIPPO ANALYTICS, INC.*